```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF VERMONT

UNITED STATES OF AMERICA          )      CRIMINAL ACTION NO.
                                  )      5:20-cr-29-1
         vs.                      )
                                  )
MICHAEL A. GONZALEZ,              )
              Defendant.          )
```

```
                        CHANGE OF PLEA
                    Friday, January 8, 2021
                      Burlington, Vermont
```

BEFORE:

    THE HONORABLE GEOFFREY W. CRAWFORD,
    Chief District Judge

APPEARANCES:

JOHN J. BOSCIA, ESQ., U.S. Attorney's Office, 11 Elmwood
    Avenue, 3rd Floor, P. O. Box 570, Burlington, VT
    05402-0570, Counsel for the Government

KAREN RUSH SHINGLER, ESQ., 1233 Shelburne Road, Suite C-4,
    South Burlington, VT 05403, Counsel for the Defendant
    (via videoconference)

SHAWNA LAPIERRE, U.S. PROBATION (via videoconference)

MICHAEL A. GONZALEZ, DEFENDANT (via videoconference)

```
                   Johanna Massé, RMR, CRR
                   Official Court Reporter
                      P. O. Box 5852
                   Burlington, VT 05402
           802-951-8102 | 802transcripts@gmail.com
```

1  Friday, January 8, 2021

2       (The following was held via videoconference at 3:08 PM.)

3            COURTROOM DEPUTY HOWE:  This is case number 20-CR-29,

4  United States of America vs. Michael Gonzalez.  Present for the

5  Government is Assistant U.S. Attorney John Boscia, and present

6  by videoconference is Attorney Karen Shingler; the defendant is

7  present by video from Northwest Correctional Facility; and the

8  matter before the Court is a change of plea.

9            THE COURT:  All right.  Afternoon.  Good to see

10 everybody.

11           MR. BOSCIA:  Afternoon.

12           THE COURT:  I would say for the record that I know Mr.

13 Gonzalez well enough at this point to recognize him and to

14 confirm that he is appearing on the screen.

15      And also, Mr. Gonzalez, we'll talk for just a second about

16 the video appearance.  Do you understand that although you're

17 appearing by video, that you have every right to appear in

18 court in person at this hearing and at every other stage of the

19 case?

20           THE DEFENDANT:  Yes, I do.

21           THE COURT:  And did you talk over your decision with

22 Ms. Shingler to appear by video today?

23           THE DEFENDANT:  Yes, I have.

24           THE COURT:  Do you understand that if you have a

25 question or something you want to tell her privately as her --

1  you know, as her client, that you have only to let me know and

2  we'll set up a private line of communication either by phone or

3  by video so you can talk to her?

4          THE DEFENDANT:  Yes, I do.

5          THE COURT:  All right.  I'll join you in the decision

6  to appear by video.  It's permitted by Congress, by the rules

7  of the judiciary at the national level and also this district,

8  and I'll make the finding it's in the interest of justice in

9  light of the health emergency to proceed in this fashion.

10     My understanding today is that -- Ms. Shingler, is that

11 Mr. Gonzalez intends to plead guilty to the charge of making a

12 false statement in connection with the attempted acquisition of

13 a firearm and that the parties have agreed that he will be

14 released on conditions today, sent home, and that we'll

15 schedule a sentencing and, if all goes well between now and

16 then, that the Government will recommend a time-served

17 sentence.

18     Is that how you understand things?

19          MS. SHINGLER:  Yes, Judge.  And thank you very much

20 for fitting us in this afternoon.

21          THE COURT:  Of course.

22          MS. SHINGLER:  Things have transpired very, very

23 quickly between myself and Mr. Boscia over the course -- we

24 were facing some deadlines that are popping up as soon as next

25 Monday to prepare for the bench trial.  I had subpoenas ready

1  to go out, and I think with those deadlines looming, the

2  parties were motivated to resolve this case.  Quite frankly, I

3  was looking forward to trying the case.  Unlike many other

4  trials in federal court, I thought I had a shot.  But I think

5  that this is in my client's best interest.  I think it's an

6  appropriate resolution.  Like I said, I thank you very much for

7  fitting us in, and we are prepared to proceed as the Court

8  noted.

9          THE COURT:  Great.  All right.

10      Is that how you understand the state of things, Mr.

11  Gonzalez, yourself?

12          THE DEFENDANT:  Yes, it is.

13          THE COURT:  Okay.  And, Mr. Boscia, that's how you

14  understand it as well?

15          MR. BOSCIA:  It is, your Honor.

16          THE COURT:  All right.

17          MR. BOSCIA:  And just to be clear, the Government was

18  also ready for -- was looking forward to a bench trial in front

19  of your Honor, but this resolution does serve the interest of

20  justice.

21          THE COURT:  All right.  Well, I would have been glad

22  to have done it.  I sort of prefer the jury trial, but those

23  aren't very practical right now, and it would have been a

24  pleasure to see both of you in action, but this sounds like a

25  happy resolution for Mr. Gonzalez because the recommendation of

1 a time-served sentence from the Government carries weight.

2      All right.  Let me turn to the change of plea.  I need to

3 ask you a series of questions, Mr. Gonzalez, and I do it to

4 make certain that your rights are protected and your plea is

5 voluntary.  What we say is recorded, so just as you have been

6 doing, I know you'll answer aloud "yes" or "no," whatever the

7 question -- the right answer is.

8      If you don't understand what I'm asking or some other part

9 of this proceeding, just say so.  It's my job to take time to

10 explain your rights fully.  It's important that you understand

11 what I'm asking you and everything else that you hear said

12 today.

13      And as I said at the outset, if at any time you wish to

14 speak privately with Ms. Shingler, with your attorney, just say

15 so.  We'll take a break and put the two of you in touch.

16      Do you understand what I've said so far?

17           THE DEFENDANT:  Yes, I do.

18           THE COURT:  At this time I'm going to ask that you be

19 placed under oath.  Do you understand that if you make a

20 statement today which is not true, that the statement could be

21 used against you in a prosecution for perjury or for making a

22 false statement?

23           THE DEFENDANT:  I do.

24           THE COURT:  And we'll swear the defendant in.

25           COURTROOM DEPUTY HOWE:  Mr. Gonzalez, would you raise

1  your right hand.

2      (The defendant was sworn.)

3          THE COURT:  Would you state your full name for the

4  record.

5          THE DEFENDANT:  Michael Anthony Gonzalez.

6          THE COURT:  And, Mr. Gonzalez, how far have you gone

7  in school?

8          THE DEFENDANT:  Some college at the University of

9  Vermont.

10          THE COURT:  And since leaving college, what type of

11  employment have you followed, mainly?

12          THE DEFENDANT:  I've worked for the Vermont Department

13  of Motor Vehicles, mostly charity work finding vehicles for

14  low-income Vermonters for the past 12 years.

15          THE COURT:  Okay.  Like what Good News Garage does,

16  that sort of thing?

17          THE DEFENDANT:  Yes.  I purchase a lot of their cars.

18          THE COURT:  Okay.  And do you speak and understand

19  English as your native language?

20          THE DEFENDANT:  English.

21          THE COURT:  And are you a U.S. citizen?

22          THE DEFENDANT:  I can't hear you.

23          THE COURT:  Are you a U.S. citizen?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Have you recently been hospitalized or

1  treated for drug addiction?

2          THE DEFENDANT:  No.

3          THE COURT:  Have you taken any drugs or medicine or

4  pills or consumed alcohol within the last 24 hours?

5          THE DEFENDANT:  No.

6          THE COURT:  Do you feel that you have a clear

7  understanding of this change of plea proceeding?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Does counsel for the Government or the

10 defense have any doubt as to Mr. Gonzalez's competence to enter

11 a valid plea?

12         MR. BOSCIA:  Not from the Government, your Honor.

13         MS. SHINGLER:  No, your Honor.

14         THE COURT:  Appreciate it.

15     I received a copy of the proposed plea agreement.  Mr.

16 Gonzalez, are you fully satisfied with the counsel,

17 representation, advice given to you in this case by your

18 attorney, Karen Shingler?

19         THE DEFENDANT:  Yes, Judge.

20         THE COURT:  Did you have an opportunity to read and

21 talk over the plea agreement with her before you signed it?

22         THE DEFENDANT:  Yes, I did.

23         THE COURT:  Were you able to speak in a confidential

24 setting where you felt free to ask her any questions that were

25 on your mind?

1              THE DEFENDANT:  Yes, I did.

2              THE COURT:  Was she able to answer all your questions?

3              THE DEFENDANT:  Yes, she did.

4              THE COURT:  At the end of that discussion, did you

5  yourself sign the plea agreement?

6              THE DEFENDANT:  Yes, I did.

7              THE COURT:  And does the plea agreement represent the

8  complete understanding you have with the prosecution?

9              THE DEFENDANT:  Yes, it does.

10              THE COURT:  Is there any further outside agreement

11  with the Government which isn't written down in the plea

12  agreement?

13              THE DEFENDANT:  No, there is not.

14              THE COURT:  And we've talked about the terms.  Do you

15  feel that you fully understand the terms of the plea agreement

16  yourself?

17              THE DEFENDANT:  Yes, I do.

18              THE COURT:  Do you understand it's an open plea

19  agreement that contains no limit on the length of the sentence

20  other than it not exceed the length allowed by law but that the

21  Government has agreed to recommend a time-served sentence?

22              THE DEFENDANT:  I do understand.

23              THE COURT:  Has anyone made a promise or an assurance

24  to you that's not contained in the plea agreement to persuade

25  you to accept it?

1               THE DEFENDANT:  No.

2               THE COURT:  Has anyone made a threat against you to

3  persuade you to accept this agreement?

4               THE DEFENDANT:  No.

5               THE COURT:  Do you understand, as I said, that the

6  terms of the plea agreement contain no limit on the length of

7  any sentence other than, of course, that it not exceed the

8  length allowed by law?

9               THE DEFENDANT:  Yes.

10              THE COURT:  Ms. Shingler, were all formal plea offers

11  from the Government conveyed to Mr. Gonzalez?

12              MS. SHINGLER:  Yes, Judge.

13              THE COURT:  Mr. Gonzalez, do you understand that the

14  offense to which you're pleading guilty is a felony; that if

15  your plea's accepted, you will be convicted of that felony; and

16  that conviction may deprive you of important civil rights in

17  the future, many of them dependent on whatever state you live

18  in, but these may include the right to vote, the right to hold

19  public office, the right to sit on a jury, and the right to

20  possess any kind of firearm?

21              THE DEFENDANT:  I understand.

22              THE COURT:  Do you understand that the maximum penalty

23  provided by law for the offense is up to ten years of

24  imprisonment, up to three years of supervised release, up to a

25  $250,000 fine, and a $100 special assessment?

1          THE DEFENDANT:  Yes, Judge.

2          THE COURT:  I need to tell you that your sentence will

3 be determined by a combination of advisory sentencing

4 guidelines, possible authorized departures from those

5 guidelines, and other statutory sentencing factors.  Have you

6 and Ms. Shingler talked about how these guidelines might apply

7 to your case?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you understand that the Court can't

10 determine the guideline range for your case until after a

11 presentence report has been completed and you and the

12 Government have had a chance to challenge the facts and the

13 application of the guidelines recommended in the report and

14 that the sentence ultimately imposed may be different from any

15 estimate your attorney or anyone else may have given you?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Do you understand that after your

18 guideline range has been determined, the Court has the

19 authority in some circumstances to depart upwards or downwards

20 from that range and will also consider other factors under the

21 sentencing law that may result in a sentence that's either

22 greater or lesser than the advisory guideline sentence?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Do you understand that parole has been

25 abolished in the federal system, that if you're sentenced to

1  prison, you'll not be released partway through your sentence on

2  parole, as frequently happens in state sentencing systems?

3         THE DEFENDANT:  Yes.

4         THE COURT:  Do you understand that under some

5  circumstances you or the prosecution may have the right to

6  appeal any sentence that I impose?

7         THE DEFENDANT:  Yes.

8         THE COURT:  I'm going to change subjects, talk to you

9  about your trial rights.  These are important constitutional

10 protections which are available to protect people at the time

11 of their trial.  And you have those rights now, but when you

12 plead guilty, you give up your trial and, in effect, give up

13 these trial rights at the same time.  That's why we talk about

14 them before you plead guilty.

15     Do you understand first that you have every right to plead

16 not guilty to the offense charged against you and to take the

17 case to trial?

18         THE DEFENDANT:  Yes, Judge.

19         THE COURT:  Do you understand that you would then have

20 the right to a trial in front of a jury?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Do you understand that if you -- that all

23 members of the jury would have to agree that you were guilty

24 before you could be found -- before you could be convicted?

25         THE DEFENDANT:  Yes, I do.

1           THE COURT:  Do you understand you'd have the right to

2    participate in choosing jury members from members of the larger

3    community?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Do you understand at trial you'd be

6    presumed to be innocent; the Government would have to prove you

7    guilty beyond a reasonable doubt in order to obtain a

8    conviction?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Do you understand you'd have the right to

11   the assistance of an attorney in your defense, appointed by the

12   Court if necessary, at trial and at every other stage of the

13   case?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you understand that you'd have the

16   right to see and hear all the witnesses and to have them

17   cross-examined in your defense?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Do you understand that you'd have the

20   right to decline to testify unless you voluntarily decided to

21   testify in your own case?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Do you understand you would have that

24   right to testify and to put on your own evidence?

25          THE DEFENDANT:  Yes, I do.

1          THE COURT:  And do you understand you'd also have the

2     right to compel witnesses to come to court and testify in your

3     case?

4          THE DEFENDANT:  Yes.

5          THE COURT:  In other words, do you understand that at

6     a trial you could put on your own witnesses, your own

7     testimony, and your own evidence?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you understand that if a witness didn't

10    wish to come, the Court could order him or her to come and

11    testify anyway?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Do you understand that if you decided not

14    to testify or not to put on any evidence on your own, that that

15    decision would not be used against you at trial?

16         THE DEFENDANT:  Yes, I do.

17         THE COURT:  Do you understand that nobody could force

18    you to testify because you have a privilege against

19    incriminating yourself?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Do you understand that if you were found

22    guilty after a trial, you could appeal your conviction to a

23    higher court?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Do you understand that by entering a plea

1 of guilty, there will be no trial and you'll have waived or

2 given up your right to a trial as well as those other rights

3 associated with a trial which I've just described?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Do you understand that at trial the

6 Government would have to prove the essential elements of the

7 offense of making a false statement in connection with the

8 attempted acquisition of a firearm from a licensed dealer

9 beyond a reasonable doubt?

10     And these elements are as follows:

11     One, the defendant purchased or attempted to purchase a

12 firearm from a licensed dealer; two, the defendant made an oral

13 or written statement to that dealer in connection with that

14 purchase; three, the statement was false; four, the defendant

15 made the statement knowing it was false; five, the statement

16 was material to the lawfulness of the sale of the firearm; and

17 six, the false statement was intended or likely to deceive the

18 dealer.

19     Do you understand that those are the legal elements of the

20 offense?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Will the prosecution provide a

23 representation of the facts the Government would be prepared to

24 prove at trial.

25          MR. BOSCIA:  I would, your Honor.  If I may just go

1  back to one small piece of the colloquy thus far.  I think

2  everybody is aware of it, but one promise or agreement is that

3  the Government will not oppose Mr. Gonzalez's release on

4  conditions.  That's not in the plea agreement.  I just want to

5  make sure that that's on the record, that everyone understands

6  that.

7          THE COURT:  Appreciate that.  Yes.  Thank you.

8          MR. BOSCIA:  As far as the factual basis for the plea,

9  the Government states as follows:

10     On August 26, 2019, Michael A. Gonzalez was arraigned by

11 Judge David Fenster in Chittenden County Superior Court on a

12 charge of first-degree aggravated domestic assault with a

13 weapon, in violation of 13 VSA, Section 1043(a)(2).  During the

14 arraignment, Michael A. Gonzalez was provided with a copy of

15 the charging information, which stated that the penalty for a

16 violation of 13 VSA, Section 1043(a)(2), was not more than 15

17 years of imprisonment.

18     On September 23rd, 2019, Michael A. Gonzalez attempted to

19 purchase a Ruger Security 9-millimeter caliber pistol from a

20 federally licensed dealer in Williston, Vermont.  As part of

21 the attempted purchase, Gonzalez completed an ATF Form 4473.

22 On the ATF Form 4473, Gonzalez falsely stated that he was not

23 under indictment or information in any way for a felony for

24 which the judge could imprison him for more than one year.

25 Gonzalez provided the ATF Form 4473 containing the false

1  statement to the firearms dealer, who submitted the information

2  to the FBI's National Instant Criminal Background Check System.

3  The initial response from the NICS was "delay."  Gonzalez never

4  obtained the Ruger pistol.

5         Thank you.

6              THE COURT:  Thanks.

7         Mr. Gonzalez, has the Government accurately described the

8  offense and your role in it?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Do you disagree with any portion of the

11 Government's description of your conduct?

12             THE DEFENDANT:  No.

13             THE COURT:  Do you intend to plead guilty because

14 you're in fact guilty of the charge against you?

15             THE DEFENDANT:  Yes, Judge.

16             THE COURT:  How do you plead to the sole count of the

17 indictment, the charge of making a false statement in

18 connection with the attempted acquisition of a firearm from a

19 licensed dealer:  guilty or not guilty?

20             THE DEFENDANT:  Guilty.

21             THE COURT:  It's the finding of the Court in the case

22 of United States vs. Michael Gonzalez that the defendant is

23 fully competent, capable of entering an informed plea; that

24 he's aware of the nature of the charges, the consequences of

25 the plea; the plea of guilty is a knowing and voluntary plea

1 supported by an independent basis in fact containing each of

2 the essential elements of the offense.  The plea is therefore

3 accepted, and the defendant is adjudged guilty of that offense.

4       We'll set a sentencing date in a moment.  Do we have a

5 sentencing date now?

6             COURTROOM DEPUTY HOWE:  It is Tuesday, May 11th, at

7 1:30.

8             THE COURT:  Between now and May, a presentence report

9 will be prepared by the Probation Office to assist the judge in

10 sentencing.  You'll be asked to give information for the

11 report, and your attorney may be present for any interview if

12 you wish.

13       The Court will permit you and Ms. Shingler to read the

14 report and file any objections to the report before the

15 hearing.  At the hearing you and Ms. Shingler will both have an

16 opportunity to speak on your behalf.

17       And I'll refer the case to the Probation Office for a

18 presentence investigation and report.

19       We set a sentencing date already.

20       We'll take up the question of pretrial release, which I

21 understand the parties agree to.

22       Did you have, Mr. Boscia, anything more to add on that

23 point?

24             MR. BOSCIA:  Only two small points, your Honor.

25 Number one, Mr. Gonzalez has been detained for quite some time.

1  Length of his detention is approaching his anticipated

2  guidelines range.  The chance for release on conditions prior

3  to his sentencing is an opportunity really for Mr. Gonzalez to

4  show the Court that he has earned a time-served sentence at the

5  time of sentencing.

6          THE COURT:  Good.  I saw it the same way.

7          MR. BOSCIA:  And as far as the conditions of release,

8  they were prepared by the Probation Office.  I had e-mailed

9  them just before the hearing.  I'm just asking that one

10 additional name could be added to the Condition (8)(j) as far

11 as the individuals with whom Mr. Gonzalez should not have

12 contact.  That additional name is Amanda Carrassi, and that's

13 been mentioned to the Probation Office as well.

14         THE COURT:  Okay.

15         MR. BOSCIA:  Thank you.

16         THE COURT:  Ms. Shingler, anything to add to the

17 question of release?

18         MS. SHINGLER:  No, Judge.  I recently received a copy

19 of the proposed conditions of release, I had an opportunity

20 very briefly to speak with my client about them, and I had been

21 made aware by an e-mail from Mr. Boscia that he intended to

22 request the additional name of Amanda Carrassi as a person that

23 the defendant should not have contact with, and my client does

24 not oppose the request.

25         THE COURT:  All right.  And the same as to Kelsey

1  Clain?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Is Kelsey the mother of the child that

4  they have in common?

5          MS. SHINGLER:  Yes.  And Kelsey -- it is possible,

6  Judge, that I may at some point in the future ask the Court to

7  modify that condition of release to permit them to have sort of

8  contact.  She has had the relief from abuse order dismissed.

9  However, the state charge remains pending, and he does have a

10 no-contact condition with her in that case.

11         THE COURT:  Right.

12         MS. SHINGLER:  She is currently in residential

13 treatment, however, so we have no problem with that at this

14 time.

15         THE COURT:  Okay.  And while we're on that topic, no

16 state detainer?  He's able to go home tonight?

17         MS. SHINGLER:  Correct.

18         THE COURT:  Good.  Okay.

19    And I was going to take these two names up with you

20 directly, Mr. Gonzalez.  Do you understand that you can have no

21 contact -- that would even include, you know, text, phone call,

22 running into each other, contact initiated by Ms. Clain or Ms.

23 Carrassi, doesn't matter how it happens, that you can't have

24 contact with those two?

25         THE DEFENDANT:  Yes, sir, I understand.

1          THE COURT:  All right.  So if you were in Price

2  Chopper and you saw them in the vegetable section, what would

3  you do?

4          THE DEFENDANT:  I would leave immediately.

5          THE COURT:  There you go.  Okay.  I just put it out

6  there so there's not any misunderstanding.

7          THE DEFENDANT:  Okay.

8          THE COURT:  You know, it's not that -- doesn't matter

9  who was there first or what errand you're on.  If you see them,

10  just turn and go in the other direction and we'll call it good.

11          THE DEFENDANT:  One good thing about being detained is

12  you have no problem avoiding contact.  You're following orders

13  after you've been detained for so long.

14          THE COURT:  Yeah, right.  You kind of get -- a person

15  gets kind of used to it.

16          THE DEFENDANT:  Um-hum.

17          THE COURT:  And where are you going to go to live?

18          THE DEFENDANT:  Spruce Street in Burlington.  I've

19  arranged to stay at -- as approved through Pretrial Services.

20          THE COURT:  Okay.  With a roommate or friend or

21  something?

22          THE DEFENDANT:  It's my own place.

23          THE COURT:  Oh, it's your own place already.  Good.

24  Okay.  Like Spruce and St. Paul, like there?

25          MS. SHINGLER:  It's 119 Spruce Street, Judge.  I know

1  you're familiar with the area.

2          THE COURT:  Right.

3          MS. SHINGLER:  I think it's up on the hill.

4          THE COURT:  Oh, okay.  Okay.

5          MS. SHINGLER:  You may bump into him.

6          THE COURT:  It would be a pleasure, and I'll shake his

7  hand if I see him.  I would be very glad to see Mr. Gonzalez.

8  I live not too far from there.

9      All right.  So I will release you on the conditions that

10 are agreed to.  You'll get them in writing.  I think you're

11 going to come in Monday and meet with Ms. Lapierre.

12     Is that the plan, Ms. Lapierre?

13         MS. LAPIERRE:  Yes, your Honor.  It won't be myself,

14 but there will be a duty officer that he can meet with to

15 review conditions and go over things at the Probation Office on

16 Monday.

17         THE COURT:  Perfect.  All right.  And while I've got

18 you on unmute, anything else that we need to cover with Mr.

19 Gonzalez on his pretrial release?

20         MS. LAPIERRE:  No.  Just as long as he knows to go to

21 Probation on Monday to check in, I think we're all set.

22         THE COURT:  Okay.

23         COURTROOM DEPUTY LANE:  Judge Crawford?

24         THE COURT:  Yes.

25         COURTROOM DEPUTY LANE:  We have pending motions of

1  counsel that need to be withdrawn.

2          THE COURT:  Oh, appreciate it.

3      Ms. Shingler, I'll turn the floor over to you.

4          MS. SHINGLER:  Right.  We -- we had a motion hearing

5  that we kind of deferred because my client decided against a

6  jury trial for a bench trial.  To the extent that they remain

7  pending, we withdraw them as moot.

8          THE COURT:  All right.  Does the Government have any

9  motions *in limine* pending?

10          MR. BOSCIA:  I believe we do, your Honor, and the

11  Government would withdraw those pending motions *in limine* as

12  well.

13          THE COURT:  Okay.  All right.

14          MR. BOSCIA:  Your Honor, if I may ask, will Mr.

15  Gonzalez sign the conditions of release at the jail prior to

16  his release today, or is that expected to happen --

17          THE COURT:  He's nodding, so I think there's a plan

18  that -- are they there, Mr. Gonzalez?  You're able to do that

19  at the facility?

20          THE DEFENDANT:  I think they're getting them right now

21  for me to -- I'll try to sign them immediately as soon as they

22  get here.

23          THE COURT:  Perfect.  Okay.

24          MR. BOSCIA:  Thank you.

25          THE COURT:  All right.  I know you've got some

1  paperwork to do with the jail, so I'll close the hearing, tell

2  you I look forward to seeing you in May.  I was thinking the

3  same thing that Mr. Boscia was, that it gives you a really good

4  opportunity to get back to employment, to stay out of trouble,

5  and to really put your best foot forward, which I know you'll

6  do, and I'll welcome that.  Okay?

7                 THE DEFENDANT:  Okay.

8                 THE COURT:  All right.  Good enough.  Thanks.

9                 THE DEFENDANT:  Thank you.

10                 MS. SHINGLER:  Everybody have a nice weekend, and

11  thank you again, Judge and Pam.  I appreciate everyone working

12  with me.

13                 THE COURT:  Yes.  Glad to do it.  All right.  See you

14  guys soon.  Thanks for the help.

15                 MR. BOSCIA:  Thank you, your Honor.

16          (Court was in recess at 3:32 PM.)

17

18

19                 C E R T I F I C A T I O N

20      I certify that the foregoing is a correct transcript from

21  the record of proceedings in the above-entitled matter.

22

23

24  March 11, 2021                    _____

25                                         Johanna Massé, RMR, CRR