UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | DOCKET NO. 5:20-cr-0029-GWC |
| ) | |
| MICHAEL GONZALEZ ) | |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM AND REPLY IN FURTHER SUPPORT OF MOTION REQUESTING WITHDRAWAL OF GUILTY PLEA**

**I. INTRODUCTION**

The Defendant, Michael Gonzalez, by and through undersigned counsel,[1] hereby offers this supplemental memorandum and reply in further support of his March 10, 2021 Motion Requesting Withdrawal of Guilty Plea ("Motion to Withdraw") (Doc. 76) and in reply to the Government's March 24, 2021 Opposition to Defendant's Motion to Withdraw ("Government's Opposition") (Doc. 79).

The Government opposes Michael's Motion to Withdraw on three primary grounds: 1) arguing that his plea was voluntary; 2) arguing that Michael has not claimed that he is legally innocent; and 3) arguing that both the government and the justice system will suffer prejudice if Michael were permitted to withdraw his plea. Throughout, the Government's Opposition overlooks the most dominant feature of Michael's request, *to wit*, the record reflects, overwhelmingly, that Michael's decision-making was driven by pre-trial detention, and his sole desire in changing his plea was for release in the unique circumstances of a pandemic.

The fact is that this case proceeded to the eve of trial at a pace far surpassing many cases in federal court because Michael was solely focused on putting the case behind him, and when the

---

[1] Current counsel filed a notice of appearance, replacing Attorney Karen Shingler, on April 12, 2021.

doors of detention opened in a proposed plea, Michael accepted it. The Government justifiably second-guesses Michael's thought process, but reasonable second-guessing only reveals that Michael's change of plea was a function of release and not guilt.  Further, not only does Michael explicitly assert his innocence, but the evidence of the case indicates that same lack of culpability. As such, and as set forth herein, the Motion to Withdraw should be granted, and the only discernible prejudice to the Government lies in trying a case that seems unlikely to meet the reasonable doubt threshold.

## II.  BACKGROUND IN RESPONSE TO GOVERNMENT'S OPPOSITION

Throughout, the Government's Opposition overlooks the unique stresses imposed upon those in pre-trial detention during the pandemic.  Before these charges, Michael had problems, unquestionably, but while he faced pending charges in the Chittenden Superior Court, Michael could meet with his lawyer face-to-face, and he could regularly speak to and see his family. On March 18, 2020, that all changed. Hand-in-hand with the start of the pandemic, Michael was arraigned on these charges, and he spent the next ten-months in one of the strangest and most isolating periods in American history.

In the best of times, pre-trial detainees face a disruptive reality, with telephone calls recorded, conversations and letters monitored, and random searches a part of daily existence.  Inmates, of course, are always separated from their families, but the pandemic of 2020/2021 cleaved a fundamental norm enjoyed even within the walls of jail – meaningful, in-person meetings with counsel.

Current counsel took on the representation of Michael on April 12, 2021, and in reviewing the file, it is clear that Michael's decision-making has been hampered by the extraordinary circumstances of the pandemic.  The procedural history of Michael's case has taken a variety of

odd turns, and it is clear that pressures from incarceration and the pandemic weighed heavily upon Michael during this prosecution.  Notably, for a portion of time, Michael was suffering from the Coronavirus, and he was completed quarantined/isolated in St. Johnsbury.  Detained for ten months, having unsuccessfully sought release from detention on three separate occasions, Michael made every decision in order to hasten the end of his case, going so far as waiving his 6th amendment right to a jury trial. (Government Opposition at pg. 2).  Consistent with his desires throughout, however, on January 8, 2021, Michael accepted a proposed plea agreement, in which the Government agreed to support both a time-served sentence and to not oppose the defense's request that he be released pending sentencing. (Government Opposition at pg. 3, 6).  No doubt, the urgency for release was further ignited by the potential loss of Michaels's son to DCF custody. (Motion to Withdraw pg. 2)

The procedural history reflects a young man (twenty-nine years old at the time of the alleged offense), who was willing to do anything to get out of jail. Simply put, Michael accepted a resolution that addressed his lone calculus – release from incarceration.

Experienced counsel was appointed to represent Michael (both Attorneys Stephen Barth and Karen Shingler), but it is obvious that these relationships were severely handicapped by the fact that in-person meetings were prohibited by Covid-19 protocols.  Appointed counsel always faces difficulties in establishing a relationship with a client, but in the era of no in-person meetings, the difficulties in establishing a productive attorney-client relationship are amplified greatly.

Throughout 2020, Michael presented as a defendant asserting his innocence (again, even waiving his right to jury trial in favor of an expedited bench trial), and the prosecution faced an uphill task in proving a very difficult case (a point explained in greater detail below).  That Michael only sought to withdraw from the plea after his release was revoked, only reveals the reason that

3

the Motion to Withdraw should be granted, *i.e.* the decision to plead guilty was reached solely to secure release, rather than by Michael's abandonment of his belief in his innocence.

### III.  LEGAL ARGUMENT IN REPLY

The Government reaches its conclusions by neglecting the individualized circumstances of this case, and by ignoring the obvious compromising effects of the pandemic. In the end, discretion for allowing withdrawal lies solely with this Court, and withdrawal should be allowed in simple consideration of fairness to Michael.  *United States v. Kalichenko*, 840 F.App'x 644, 646 (2d Cir. 2021) ("court may allow [defendant] to withdraw plea of guilty if the defendant can show a fair and just reason for requesting the withdrawal") (quoting Fed. R. Crim. P. 11(d)(2)(B)).

First of all, the Government erroneously states that "Gonzalez has not claimed that he is legally innocent."  (Government Opposition at 11).  Michael has claimed legal innocence (Motion to Withdraw pg. 4), and for good reason, the evidence of the case does not indicate guilt.  Michael is innocent unless he "*knew* [that he] was making false statements in connection with the acquisition of firearms," and thus, that he "acted with knowledge that [his] conduct was unlawful."  *Dixon v. United States* 548 U.S. 1, 5-12, 126 S. Ct. 2437, 2441-44, 165 L. Ed. 2d 299 (2006) (emphasis added).  To this end, the Government relies upon Michael's knowledge that his pending charges in state court triggered an affirmative response to the question of "whether he was under indictment or information for a felony or any other crime punishable by more than one year of imprisonment." (Government Opposition at 2) (in connection with an application to acquire a firearm on February 20, 2020).   As to Michael's knowledge, the Government will rely upon materials allegedly presented to him at arraignment day in the Chittenden Superior Court on August 26, 2019, during which, apparently, Michael participated *via* video and was represented by a very busy public defenders office.  (See September 1, 2020 Defendant's Motion in Limine to Exclude Evidence and

for the Disclosure of Evidence [Doc. 34] at pg. 20).  To anyone who has observed the criminal session of the Vermont Superior Court during arraignments, *the preceding sentence alone sheds light on Michael's innocence,* and conversely, demonstrates that the Government has a murky case in which the reasonable doubt standard is unlikely to be met.  *Cf. United States v. Keith*, 797 F. App'x 649, 652 (2d Cir. 2020) (knowledge of prohibited status inferred where defendant previously "served over two years in prison.")

The Government also questions the withdrawal request given the two months between the January 8, 2021 change of plea and the march 10, 2021 filing of the Motion to Withdraw. (Government Opposition at 12).  While the defense disagrees with an assertion that this brief time lapse is of any significance, the Government's position ignores the reality of Michael's situation. After his arrest in New Hampshire, Michael was initially detained in Rockingham County Jail. He was then taken to the Merrimack County Jail, where he was held for a week, before being transferred to the Cheshire County Jail, which required a quarantine period and presented with very limited opportunities to have contact with counsel (again, no in-person meetings took place). As soon as possible, Michael spoke with prior counsel, sought advice with regard to the ramifications of a withdrawal request, and Michael requested withdrawal of his plea weeks before the actual Motion to Withdraw was filed.  Viewed within context, Michael's request was both timely and indicative of a plea made in hasty consideration of prompt release, rather than in contemplation of guilt.  Compared to others, including the case cited by the Government, the two month delay is not unduly long regardless. See *United States v. Doe*, 537 F.3d 204, 213 (2d Cir. 2008) (cited at by Government Opposition at 11) (five-month delay between defendant's guilty plea and filing motion to withdraw supported denial of that motion); *United States v. Torres*, 129

F.3d 710, 715 (2d Cir. 1997) (seven-month delay); *United States v. Carreto*, 583 F.3d 152, 157 (2d Cir. 2009) (one-year delay).

Finally, the Government argues that it will be prejudiced by withdrawal because the prosecution has already expended significant "investment of prosecutorial and judicial resources [which were] only increased by the fact that this case proceeded during a pandemic with limited in-person hearings." (Government Opposition Pg. 13).  Here, the Government has not cited any legitimate prejudice (such as the loss of a witness, unfair disclosure of Jencks materials, *etc.*). See *United States v. Lombardozzi*, 436 F.2d 878, 881 (2d Cir. 1971) (recognizing prejudice where change of plea occurred after defendant "after he heard…the principal government witness testify"); *United States v. Gonzalez*, 2010 WL 1640186, at *7 (S.D.N.Y. Apr. 8, 2010) ("Both parties prepared for trial almost one year ago, and the Government produced Section 3500 material."); *United States v. Cruz*, 528 F. Supp. 2d 151, 159 (W.D.N.Y. 2007) (finding prejudice where "codefendants who were scheduled to testify for the government have already…received the benefit of whatever cooperation they previously provided to law enforcement authorities," lead Government attorneys had left their positions, and "physical evidence['s]…current whereabouts and even existence are uncertain.") And here again, the prosecution's argument misses the mark. The hurdles to the government and the asserted difficulties due to the lack of "in person hearings" pale in comparison to the prejudice suffered by Michael's lack of access to in-person meetings with his attorney.  The difficulties of the pandemic created uncertainty and hardship, most importantly, for those detained pending trial, not the Government. In ordinary circumstances, pretrial detention creates a host of pressures upon those awaiting trial, and this pressure unquestionably results in an unnatural motivation to resolve a case by way of plea. Dobbie, Will, Jacob Goldin, Crystal Yang. 2016. *The Effects of Pre-Trial Detention on Conviction, Future*

*Crime, and Employment; Evidence from Randomly Assigned Judges*, American Economic Review, Vol. 108, 3 (finding that pre-trial detention affects both the rate of conviction and the rate of guilty plea, with a demonstrated 15.6% and 12% uptick respectively).  See also Albert W. Alschuler, *Preventive Pretrial Detention and the Failure of Interest-Balancing Approaches to Due Process*, 85 MICH. L. REV. 510 (1986); Samuel R. Wiseman, *Pretrial Detention and the Right to be Monitored*, 123 YALE L.J. 1344 (2014); Parron, John D., *Pleading for Freedom: The Threat of Guily Pleas Induced by the Revocation of Bail*, University of Pennsylvania Journal of Constitutional Law, Vol. 19, 138 (2017).  These pressures are heightened to an extraordinary degree that cannot be appreciated by those on the other side of prison walls during a pandemic.

Finally, again, while the revocation of Michael's release pending sentencing may raise suspicion to the prosecution, the reality is that the revocation reveals the reasoning of Michael's decision to plea guilty in the first place – it all but guaranteed exit from the isolation of jail during Covid-19. Because this reflects upon an ill-advised decision rather than guilt, Michael's Motion to Withdraw should be granted in all respects.

## IV.  CONCLUSION

WHEREFORE, Mr. Gonzalez respectfully requests that the Court grant his Motion to Withdraw in all respects.

Dated at Stowe, Vermont, this 21st day of April 2021.

By:   Counsel for Michael Gonzalez

/s/ Chandler W. Matson
Chandler W. Matson
125 Mountain Road
Stowe, Vermont 05672
chandler@barrlaw.com
Ph. (802) 253.6272

**CERTIFICATE OF SERVICE**

      I, Chandler W. Matson, hereby certify that I electronically filed the above pleading with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney of record for the Government, AUSA John Boscia.

    Dated at Stowe, Vermont, this 21st day of April 2021.

                                   /s/ Chandler W. Matson
                                   Chandler W. Matson
                                   125 Mountain Road
                                   Stowe, Vermont 05672
                                   Chandler@barrlaw.com
                                   Ph. (802) 253.6272